[Civ. No. 24417. Third Dist. Oct. 8, 1985.]

RODNEY D. SULLIVAN et al., Plaintiffs and Appellants, v.
STATE BOARD OF CONTROL et al., Defendants and Respondents.

### COUNSEL

Maureen A. Grattan and Hession, Creedon, Hamlin, Kelly, Hanson & Brown for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Robert L. Mukai, Deputy Attorney General, Dorothy L. Schechter and James L. McBride, County Counsel, and Dennis L. Slivinski, Assistant County Counsel, for Defendants and Respondents.

### OPINION

**PUGLIA, P. J.**—In this appeal we determine that a writ of mandate (Code of Civ. Proc., § 1085) does not lie (1) to compel the California Highway Patrol (CHP) to refrain from ordering its officers to appear as witnesses in court absent service upon the officers of a lawful subpoena or (2) to compel the state or county government to compensate officers of the CHP for time spent on standby status as peace officer witnesses. We conclude that plaintiffs, who are CHP officers, have adequate recourse in lieu of the extraordinary judicial remedy sought here through the collective bargaining machinery of the state Employer-Employee Relations Act (SEERA; Gov. Code, § 3512 et seq.).

The controversy focuses on a practice adopted by the CHP in Ventura County in cooperation with the district attorney to deal with congested court

calendars. The practice is designed to facilitate the availability of officer witnesses to testify in criminal cases. To secure the attendance of a CHP officer as a witness, the district attorney makes a written request to the Ventura CHP office that a certain officer be prepared to testify on a given date. The written request is known locally as a "subpoena memorandum." The CHP then delivers the subpoena memorandum to the designated officer and at the same time orders the officer to appear before the appropriate court. Because the trailing of a criminal case from one day to the next is a frequent necessity, the CHP may issue followup orders changing the officer's appearance date. Thus the officer is frequently required by his employer to be available on a standby basis to testify as a prosecution witness.

Plaintiffs Rodney D. Sullivan and Michael V. Shaw are state traffic officers employed by the CHP in Ventura County. Both plaintiffs have unsuccessfully made wage claims upon defendants State Board of Control (Board) and the County of Ventura (County) for their witness standby time. They complain that when ordered to be available for telephone contact and possible testimony on a regularly scheduled day off, they are paid overtime only if they are actually called into court; they receive no compensation for the inconvenience to and restrictions on their personal lives if they simply stand by but are not in fact required to appear in court.

Joining the individual plaintiffs in the action is the California Association of Highway Patrolmen (Association). As the collective bargaining representative of all CHP officers in the state, the Association has submitted to defendant CHP a grievance complaining of the use of "subpoena memoranda" in lieu of formal subpoenas under Penal Code section 1326 et seq. The grievance was rejected and an administrative appeal thereafter was denied.

In their mandamus petition, plaintiffs seek to compel the CHP "to refuse to order its officers to court as witnesses absent the delivery to the officer of a true subpoena." They also seek to compel the Board and the County to "overturn their denials of the [officers'] claims for compensation" and "to pay them all monies owed them, including prejudgment interest."

The superior court sustained defendants' demurrers to the petition without leave to amend stating that the collective bargaining process was the proper avenue for any relief to which plaintiffs might be entitled. Judgment was entered dismissing the action, and this appeal followed.

I

"A writ of mandate will lie only 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or

station; . . .' (Code Civ. Proc., § 1085.)" (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].) ■ In particular, there must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty. (*Ibid.*; see also generally 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, pp. 702-704.) The writ will not issue where there is a "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)

■ Plaintiffs have failed to state a cause of action in mandamus against defendant CHP because the law enforcement agency has no clear and present duty to insist on the service of a formal subpoena before requiring its officers to appear in court as witnesses. It is true that subpoena memoranda do not conform to the formalities of the subpoena process authorized in Penal Code section 1326 et seq. However, availability of statutorily authorized process does not preclude a law enforcement employer from requiring, on any other basis, court attendance of its employees in the performance of their duties as peace officer witnesses. ■ There can be no question that the giving of testimony in criminal cases is an essential and required function of CHP officers.

■ Compliance with the subpoena statute implicates the judicial process of a court to compel the attendance of a witness on penalty of being held in contempt. (Pen. Code, § 1331; see *In re Peart* (1935) 5 Cal.App.2d 469, 472 [43 P.2d 334]; *In re Abrams* (1980) 108 Cal.App.3d 685, 695 [166 Cal.Rptr. 749].) A subpoena memorandum issued by the district attorney is simply a request for appearance without judicial imprimatur. Sanctions for disobedience derive from the CHP's internal policy, or work rule, which subjects officers to discipline for insubordination if they refuse to follow their superior officer's orders to honor the appearance request and to stand by if necessary. The standard operating procedure of the Ventura-area CHP acknowledges that a subpoena memorandum does not carry the same sanctions as a subpoena, but specifies that it is an area order which, if disobeyed, may be cause for disciplinary action.

If, as plaintiffs contend, the standby procedure is at odds with CHP general orders or otherwise imposes unreasonable burden on plaintiffs, their redress is through SEERA (Gov. Code, § 3512 et seq.), which brings the terms and conditions of state public employment within the framework of collective bargaining. SEERA's express purpose is "to promote full communication between the state and its employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between the state and public employee organizations." (Gov. Code, § 3512.) To effect this purpose, "the act establishes

the principle of exclusive representation on matters of employment relations by employee organizations chosen by a majority of employees in administratively designated bargaining units. (§§ [3515.5], 3520.5, 3521.) Second, the act requires the Governor and the exclusive employee representatives to meet and confer in good faith for the purpose of reaching agreement on wages, hours and other terms and conditions of state employment. (§ 3517.) [Third], the act specifically directs that any such agreement that the parties do reach be set forth in a written memorandum of understanding. (§ 3517.5.)" *(Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 178.) ■ Finally, the act vests broad jurisdiction in the Public Employment Relations Board (PERB) to investigate and act upon unfair labor charges and alleged violations of the act. (Gov. Code, §§ 3513, subd. (g); 3514.5; 3541.3, subd. (i); see also *Pacific Legal Foundation,* at pp. 196-200.)

■ Government Code section 3516 provides that "wages, hours, and other terms and conditions of employment" are included within the scope of the representation of an employee organization and withholds that right only as to matters involving "the merits, necessity, or organization of any service or activity provided by law or executive order." A local CHP procedure requiring that officers be on standby to perform their duties as peace officer witnesses, which allegedly results in an increased work load, affects the terms and conditions of the officers' employment.

Federal labor legislation has frequently been a prototype for California labor law, and the California courts look to federal law for guidance in interpreting parallel provisions of public employee labor law statutes. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 12 [154 Cal.Rptr. 893, 593 P.2d 838]; *Solano County Employees' Assn.* v. *County of Solano* (1982) 136 Cal.App.3d 256, 259 [186 Cal.Rptr. 147].) The scope-of-representation language of Government Code section 3516 mirrors the National Labor Relations Act (NLRA), and while the NLRA contains no specific language comparable to the "merits, necessity, or organization" exception appearing in Government Code section 3516, federal decisions have incorporated the exception into the interpretation of "wages, hours, and terms and conditions of employment." (*See Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616-617 [116 Cal.Rptr. 507, 526 P.2d 971], and *Solano County Employees' Assn., supra,* 136 Cal.App.3d at p. 259, construing identical language appearing in Gov. Code, § 3504, a part of the Meyers-Milias-Brown Act (MMBA) which governs local public employee relations.) In the private sector, work loads and work rules have long been considered matters

within the scope of "wages, hours and other terms and conditions of employment" under the NLRA. In fact, a leading treatise on the NLRA includes work load and work rule issues among the "obvious and settled examples" of mandatory subjects for bargaining. (1 Morris, The Developing Labor Law (2d ed. 1983) Mandatory Subjects of Bargaining, pp. 800-801.)

In *Fire Fighters Union, supra,* 12 Cal.3d 608, the Supreme Court relied on federal precedent in arriving at the conclusion that a constant manning schedule, while arguably relating to an important policy of maintaining a particular standard for fire prevention, was subject to collective bargaining under the MMBA to the extent that the schedule affected the work loads and safety of the fire fighter employees. (At pp. 618-621.) In rejecting the argument that the challenged schedule was necessarily a management prerogative excluded from the scope of bargaining, the court relied upon the "strong public policy in California favoring peaceful resolution of employment disputes by means of arbitration" and observed that care must be taken "not to restrict unduly the *scope* of the arbitration by an overbroad definition of 'merits, necessity or organization.'" (At pp. 615, 622; italics in original.)

California cases subsequent to *Fire Fighters Union,* as well as federal decisions, have consistently applied a standard which narrowly delimits the management prerogative and overriding public policy exception to collective bargaining. (*Solano County Employees' Assn., supra,* 136 Cal.App.3d at p. 263.) Within the scope of bargaining, for example, are a rule prohibiting county employees from driving motorcycles on county business (*ibid.*); the practice of consulting with a police officers' association or an attorney prior to making oral and written reports about a shooting incident involving an officer (*Long Beach Police Officer Assn.* v. *City of Long Beach* (1984) 156 Cal.App.3d 996, 1011 [203 Cal.Rptr. 494]); and a city resolution eliminating the rights of city employees to use city facilities to wash and maintain private vehicles (*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 815 [165 Cal.Rptr. 908]). By contrast, police policies concerning department relations with a citizens' review commission (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 935-938 [143 Cal.Rptr. 255]) and the use of force policy governing the discharge of firearms by peace officers (*San Jose Peace Officers' Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935, 948 [144 Cal.Rptr. 638]) are reserved to the narrow realm of fundamental policy decisions or managerial discretion.

The subpoena memorandum and related procedures utilized in Ventura County by the CHP neither rise to the level of a management prerogative

nor implement policy considerations beyond the scope of collective bargaining within Government Code section 3516. Plaintiffs' argument to the contrary proves too much. ██ ██ Since mandamus is not available to control discretion (see generally 8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 86, pp. 725-726), the characterization of the standby witness policy strictly as a discretionary management prerogative leaves plaintiffs without any forum to resolve their grievances.

In the context of comparable provisions of the Educational Employment Relations Act (EERA; Gov. Code, § 3540 et seq.), over which PERB also exercises unfair practice jurisdiction, state courts have deferred to PERB's primary expertise where a controversy presented to a court involves activities arguably protected or prohibited under that act. (*San Jose Teachers Assn.* v. *Superior Court* (1985) 38 Cal.3d 839, 861 [215 Cal.Rptr. 250, 700 P.2d 1252]; *El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893]; *San Diego Teachers Assn., supra,* 24 Cal.3d at pp. 12-14; *Public Employment Relations Board* v. *Modesto City Schools Dist.* (1982) 136 Cal.App.3d 881, 893-894 [186 Cal.Rptr. 634].)

██ ██ ██ Although plaintiffs' association is the exclusive representative and bargaining agent of CHP officers, plaintiffs' pleadings are silent as to what efforts, if any, they have made through SEERA to alleviate the hardships of which they complain.[1] Hence they have no clear and present right to judicial relief to compel defendant CHP to abandon its internal procedures relative to subpoena memoranda.

## II

██ Similarly, plaintiffs fail to state a cause of action for mandamus relief against defendant Board or County to compel the payment of overtime compensation for their time spent on standby witness status. The plaintiff officers' claims for overtime pay fall under the heading of "wages." (See 1 Morris, The Developing Labor Law, *supra,* p. 773; *American Federation of State etc. Employees* v. *City and County of Santa Clara* (1984) 160 Cal.App.3d 1006, 1009-1010 [207 Cal.Rptr. 57].) Plaintiffs cannot serious-

---

[1] In reviewing the sufficiency of a complaint against the sustaining of a demurrer without leave to amend, the burden of proving there is a reasonable possibility that any defect can be cured by amendment rests squarely on the plaintiff. Plaintiffs here have not met that burden. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citing *Cooper* v. *Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].)

ly maintain that claims for overtime compensation involve fundamental policy considerations at the managerial or organizational level exempted from collective bargaining.

Moreover, so far as the county is concerned, plaintiffs have alleged no legal basis, contractual, statutory or otherwise, upon which a duty to compensate them may be predicated (*Bay General Community Hospital* v. *County of San Diego* (1984) 156 Cal.App.3d 944, 954 [203 Cal.Rptr. 184]).

To support their overtime claims, plaintiffs rely on the recent case of *Madera Police Officers Assn.* v. *City of Madera* (1984) 36 Cal.3d 403 [204 Cal.Rptr. 422, 682 P.2d 1087]. *Madera* is distinguishable. In that case the court applied a two-step analysis in arriving at the conclusion that, as a matter of municipal law, the mealtime break of the Madera police officers was so circumscribed by the employer's work requirements as to convert such time into hours worked. However, the only question at trial and on appeal was whether the plaintiffs were in effect "working" during their lunch; expressly excluded from consideration was whether plaintiffs had exhausted their administrative remedies. (*Id.,* at p. 407, fn. 3.) ■ ■ ■ ■ ■ Moreover, the regulations of the City of Madera, without exception, mandated overtime pay for police department employees on the basis of "hours worked" in excess of the normal eight-hour day and forty-hour week. (*Id.,* at p. 413.) No such showing has been made here.[2]

As did the superior court in denying the writ, we sympathize with the plaintiffs and other CHP officers who without compensation, are subjected to the inconvenience of standing by for court appearances during off-duty hours. Yet judicial intrusion into what amounts to a labor dispute is manifestly inappropriate where specific and adequate statutory remedies are available.

---

[2]At oral argument, plaintiff officers, citing the intervening case of *Garcia* v. *San Antonio Metro.* (1985) 469 U.S. 528 [83 L.Ed.2d 1016, 105 S.Ct. 1005], argued that the wage and hour provisions of the federal Fair Labor Standards Act (FLSA) now operate to require the payment of overtime compensation for time spent in standby status. That theory was not tendered to the trial court and on the record before us, it is not at all clear that plaintiffs' claim to overtime is covered by the FLSA. In any event the existing labor agreement negotiated under SEERA between the state and the association on behalf of plaintiffs and all other CHP officers specifically provides that at request of either party, the agreement will be reopened "to negotiate all items impacted by the Fair Labor Standards Act (FLSA)." Plaintiffs are thus constrained by their own agreement first to resort to collective bargaining to press their FLSA claims.

At defendant's request we take judicial notice of the labor agreement between plaintiff association and the state employer. (Evid. Code, §§ 452, subds. (c), (h); 459.)

The judgment dismissing plaintiffs' petition for writ of mandate is affirmed.

Carr, J., and Sims, J., concurred.